AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Mississippi

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

AUG 2 6 2025

ARTHUR JOHNSTON
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of <br><br> *(Briefly describe the property to be searched or identify the person by name and address)* <br><br> ELECTRONIC TARGET DEVICE NUMBERS 1 - 8 CURRENTLY LOCATED AT HOMELAND SECURITY INVESTIGATIONS, GULFPORT, MS | ) ) ) ) ) )    Case No. 1:25-mj- 143-BWR |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, attached hereto and incorporated herein by reference.

located in the _____ Southern _____ District of _____ Mississippi _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. §§ 1324(a)(1)(A)(ii) & (iii) | Transport, conceal, harbor or shield from detection illegal alien(s), or attempts |
| 8 U.S.C. § 1324a | Unlawful Employment of an Alien |
| 18 U.S.C. § 371 | Conspiracy to commit a federal offense |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |
| 18 U.S.C. § 1546(a) | Fraud or Misuse of Visa, Permit or Other Document |

The application is based on these facts:
See Affidavit in Support of Application For Search Warrant, attached hereto and incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Stephen Maynard, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/26/2025

_____
*Judge's signature*

City and state: Gulfport, Mississippi

Bradley W. Rath, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

AUG 2 6 2025

ARTHUR JOHNSTON
BY                    DEPUTY

ELECTRONIC TARGET DEVICE
NUMBERS 1 - 8 CURRENTLY LOCATED
AT HOMELAND SECURITY
INVESTIGATIONS, GULFPORT, MS

Case No. 1:25-mj- _143- BWR_

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

Your affiant, Special Agent Stephen Maynard, being duly sworn, deposes and states that:

1. This affidavit is made in support of an application for a search warrant for the following
   eight (8) electronic devices seized from three persons:

   A) One (1) Samsung Android cellular telephone IMEI Number 351184063755260,
   seized from Jose Daniel Quinones-Quinones (hereinafter Quinones-Quinones)
   pursuant to a federal search warrant, on or about May 3, 2025, hereinafter referred
   to as "TARGET DEVICE NUMBER 1;"

   B) One (1) Samsung Android cellular telephone (SM-S938U) bearing two separate
   IMEI Numbers as follows:  IMEI 1, Number 352512143609897, and IMEI 2,
   Number 355472313609895, Serial Number R5CY22N98DL seized from
   Quinones-Quinones, pursuant to a federal search warrant, on or about August 7,
   2025, hereinafter referred to as "TARGET DEVICE NUMBER 2;"

   C) One (1) I-phone (IMEI Number unknown) seized from Misael Ananias Pineda-
   Avalos (hereinafter referred to as Pineda-Avalos) on or about August 6, 2025,
   hereinafter referred to as "TARGET DEVICE NUMBER 3;"

D) One (1) Motorola cellular telephone, IMEI Number 351004060769491, seized from Pineda-Avalos, on or about August 6, 2025, hereinafter referred to as "TARGET DEVICE NUMBER 4."

E) One (1) Samsung Tablet IMEI Number 354386278122184, seized from Jose Anival Obando-Obando (hereinafter Obando-Obando) pursuant to a federal search warrant, on or about August 7, 2025, hereinafter referred to as "TARGET DEVICE NUMBER 5;"

F) One (1) black I-phone (IMEI Number unknown) seized from Obando-Obando, pursuant to a federal search warrant, on or about August 7, 2025, hereinafter referred to as "TARGET DEVICE NUMBER 6;"

G) One (1) Nokia cellular phone, IMEI Number 350547140594421, seized from Obando-Obando, pursuant to a federal search warrant, on or about August 7, 2025, hereinafter referred to as "TARGET DEVICE NUMBER 7;" and,

H) One (1) Samsung Android cellular telephone, IMEI Number 035045467323531, seized from Obando-Obando, on or about August 7, 2025, hereinafter referred to as "TARGET DEVICE NUMBER 8."

Searches of said electronic devices are for information regarding all activities relating to and regarding unlawful employment, transportation and harboring of illegal aliens by Quinones-Quinones and unlawful activity such as unlawful employment and the possession of false documents by his employees or associates both known and unknown to your affiant at this time, as well as methods utilized to achieve such goals by Quinones-Quinones and his employees or associates both known and unknown to your affiant at this time.  Information sought includes data related to communication (including but not limited to call histories, text messages,

instant messages, and voice mails) between Quinones-Quinones and his employees or associates both known and unknown to your affiant at this time, regarding transportation arrangements, instructions, order lists, photographs of harboring of illegal aliens, financial arrangements, and other logistical aspects related to the harboring of illegal aliens in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii); Title 18, United States Code, Section 371; Title 18, United States Code, Section 922(g)(1); and Title 18, United States Code, Section 1546(a).

2. The statements made in this affidavit are made based on the personal observations and investigation conducted by your affiant, and information communicated or reported to your affiant during the investigation by other participants in the investigation, as the content of this affidavit indicates. In addition, the information contained herein does not include every fact known by your affiant.

## **RELEVANT TRAINING AND EXPERIENCE**

I have been a Special Agent with Homeland Security Investigations (HSI) since April of 2021. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and currently have about 600 hours of HSI related coursework.

Prior to my employment with HSI, I was employed with the Federal Bureau of Investigations as an Intelligence Analyst for about three (3) years. In this capacity, I was the primary analyst for the Mobile, Alabama Field Office's Weapons of Mass Destruction Program and the office's targeting initiative.

Prior to that, I was a United States Border Patrol Agent in or near Laredo, Texas, for about seven (7) years. In that capacity, I enforced laws and investigated matters involving Transnational Alien Smuggling organizations. I would explore and detect trends, methods and

threat actors related to human and contraband smuggling.

1.  I am aware through my training and experience, that those knowingly harboring illegal aliens often utilize electronic equipment such as computers, cellular telephones, pagers, and telephone answering machines to generate, transfer, count, record and/or store pertinent smuggling information. I also am aware that cellular telephones are one of the primary methods of communication between individuals (including conspirators, employees, employers, or other associates) involved in illicit activities, which include recruiting, communicating, sharing information, and facilitating the smuggling and arranging employment and housing of undocumented aliens, as well as avoiding detection by law enforcement officials.

2.  I am aware that those knowingly profiting from illegal aliens often maintain or keep books, paper records, receipts, notes, ledgers, phone lists, computerized records, documents and/or papers relating to illegal activities as part of their routine personal or business practices. Involving harboring illegal aliens.  These records are often kept in locations where the traffickers have ready access to them, such as cellular phones. These records commonly reflect the names, nicknames or alias names, addresses and telephone numbers of both current and past criminal associates, as well as their illegal activities. These records also commonly reflect smuggling, transportation, and harboring fees, as well as the quantities of currency that represent debts or profits derived from the unlawful employment, transportation and harboring of illegal aliens.

3.  I am aware that it is common for those knowingly profiting from illegal aliens to attempt to legitimize the proceeds of illegal activities by utilizing foreign and domestic banks and their attendant services; cashier checks; money drafts; real estate purchases; front businesses; and purchases of property or various conveyances. It is common for persons

engaged in unlawful alien employment, transportation and harboring activities to keep and maintain documents and records pertaining to the use of these financial institutions and attendant services in locations where the traffickers have ready access to them, such as their cellular phones.

4. Your affiant is an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations and to make arrest for offenses enumerated in Section 2516 of Title 18, to include Sections 8, 18, 19, and 21 of the United States Code.

5. I am familiar with Title 18, United States Code, Section 371-- Conspiracy to commit a federal offense. If two or more persons conspire either to commit a federal offense and one or more of such persons do any act to affect the object of the conspiracy. I am familiar with Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii) – knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, unlawfully transports in material furtherance of his unlawful presence or conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation. I also am familiar with Title 8, United States Code, Section 1324a – Unlawful Employment of an Alien. I also am familiar with investigation of offenses under Title 18, United States Code, Section 922(g)(1) – Felon in Possession of a Firearm; and Title 18, United States Code, Section 1546(a) – Fraud or Misuse of Visa, Permit or Other Document.

6. Your affiant knows that electronic devices, such as cellular telephones, computers, and other electronic storage media can store information for long periods of time. This information can sometimes be recovered with forensic tools. Additionally, your affiant

knows that most cellular telephones have the capability to access the internet and therefore can be used by individuals to access their email accounts.

7.  Your affiant knows that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium or viewed via the internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.

8.  This affidavit is provided in support of an application for a search warrant which would authorize the forensic examination of the aforementioned electronic devices particularly described in Attachment A for the purpose of identifying electronically stored data particularly described in Attachment B.

In support of this application, your affiant states the following:

## STATEMENT OF PROBABLE CAUSE

9.  On or about May 3, 2025, at about 12:40 p.m., Homeland Security Investigations (HSI) with the assistance of other federal, state and local agencies executed the search warrant at the property which was described as a farm that had approximately 16.3-acre parcel (Parcel ID 0306B-01-009) and approximately 6.6-acre parcel (Parcel ID 0306B-01-009.000). The properties contained multiple structures to include two houses, multiple barns and outbuildings located in or near Gulfport, in Harrison County, in the Southern Division of the Southern District of Mississippi.

10. During the execution of the warrant, Jose Daniel Quinones-Quinones was found to be in the area participating in an unlawful cockfighting event. HSI seized TARGET DEVICE NUMBER 1 from Quinones-Quinones, pursuant to a federal search warrant, in relation to the illegal cockfighting event.  Additionally, TARGET DEVICE NUMBER 1 is believed

to have been a cellular phone device used in unlawful employment, transportation or harboring of one or more illegal aliens.

11. In a separate event, on or about August 6, 2025, United States Border Patrol (USBP) Agents (BPAs) assigned to the Gulfport Border Patrol Station received a request for assistance from the Mississippi Highway Patrol (MHP). MHP had pulled over a truck and trailer at or near the Vancleave High School in or near Vancleave, Mississippi, in Jackson County, in the Southern Division of the Southern District of Mississippi. All five occupants of the vehicle did not speak English and presented MHP with foreign identification documents.

12. Agents ran record checks were able to use this information to verify that all five of the vehicle's occupants were illegally present in the United States.

13. As BPAs arrived on scene to assist MHP, all five vehicle occupants absconded into a thick wooded area just off State Highway 57 in or near Vancleave, Mississippi. After a lengthy search of the wooded area, law enforcement was able to locate and arrest three of the five subjects.

14. Misael Ananias Pineda-Avalos was one of the three illegal aliens who absconded and were located in a wooded area and arrested. Two cellphones were found in his possession which are identified herein as TARGET DEVICE 3 and TARGET DEVICE 4. Pineda-Avalos admitted to BPAs that he is citizen of Honduras who was and is illegally present in the United States. He was taken to the Gulfport Border Patrol Station for processing.

15. BPAs also learned from Pineda-Avalos that he was part of a work crew and that he had been housed at the In Town Suites, a hotel located in or near Gulfport, Mississippi, in Harrison County, in the Southern Division of the Southern District of Mississippi. The

room in which Pineda-Avalos resided was later found to be booked and paid for by Jose Daniel Quinones-Quinones, whom Pineda-Avalos identified as his employer.

16. While Agents were searching for the subjects who had absconded, the registered owner of the vehicle the illegal aliens were driving, Jose Daniel Quinones-Quinones, arrived on scene and wanted to take possession of his vehicle. Quinones-Quinones freely admitted to MHP that he was the registered owner of the vehicle and that the subjects worked for him.

17. Quinones-Quinones was interviewed by Agents (recorded using official USBP body-cam equipment) concerning individuals who remained at large, and Quinones-Quinones stated that two of the individuals were staying at a hotel in Vancleave, MS, near Interstate I-10. Quinones-Quinones also stated that he was staying at the same hotel in Vancleave. Both statements later were determined to be false statements.

18. Agents learned through interviews with three illegal aliens who were taken into custody, that the entire crew, including Quinones-Quinones, were staying at the In Town Suites, a hotel in or near Gulfport, in Harrison County. Agents drove to the hotel with one of the illegal aliens to retrieve his Honduran passport and while at the hotel, Agents observed Quinones-Quinones seated in the same vehicle (bearing a certain Georgia License Plate Number) that he had been driving at the original scene, in or near Vancleave, in Jackson County, Mississippi, with the MHP.

19. Two USBP Agents, together with one of the apprehended aliens who gave consent to enter his room and who used his key, entered In Town Suites hotel room Number 239, to retrieve the alien's passport. The Agents could clearly see that multiple people had been living in the hotel room. There was additional bedding on the floor and the occupants' personal belongings were scattered in the room. The rest of the work crew had not yet returned to the hotel while the Agents were on scene retrieving the passport of the alien who gave

consent to enter the room. However, they did observe at least one other vehicle that was also registered to Quinones-Quinones located outside of the In-Town Suites, which bore a certain Georgia License Plate Number.

20. USBP Agents returned to In Town Suites on or about August 7, 2025, at about 5:00 a.m. to wait for the two illegal aliens who absconded from the scene of the vehicle stop, who had been identified by their last names as Ramirez and Padilla-Ramos, to leave the hotel. At approximately 7:15 a.m., Quinones-Quinones was observed leaving the hotel. The Agents waited to see if Quinones-Quinones would return for Ramirez and Padilla-Ramos, however, he never returned. At approximately 9:15 a.m., Agents knocked on the door to Room 239 and while standing at the door, both Agents observed Ramirez and Padilla-Ramos move the curtain and look out at the Agents. The two suspects quickly closed the window and refused to open the door.

21. Agents surveilled the outside of room 239 at the In-Town Suites. It was the only exit door clearly visible to the agents until a search warrant was granted and executed at room 239 of the In-Town Suites. Upon entering room 239, agents encountered three occupants, Albaro Jose Harrera, Jose Omar Padilla-Ramos, and Jose Anival Obando-Obando. BPAs were advised by the occupants that their boss was staying in room 135.

22. During the execution of the search warrant for Room 239, TARGET DEVICEs 5, 6, 7, and 8 were seized and were determined to be the property of Obando-Obando. Additionally, a false Permanent Resident Alien Identification Card (PRAIC) and false Social Security Card (SSC) were found and determined to belong to Pineda-Avalos. The PRAIC bore the photograph of Pineda-Avalos together with a different name that matched the name on the SSC. Both the PRAIC and SSC are documents qualifying for prosecution under Title 18, United States Code, Section 1546(a).

23. BPAs were advised by hotel staff that Quinones-Quinones rented three rooms at the hotel which were identified as follows: Room 135, Room 239, and Room 324. Border Patrol Agents contacted Quinones-Quinones at Room 135 and informed him of the search warrant for Room 239 and for the following two vehicles he had on the property:

    a. One (1) white 2022 Ford F-250 Super Duty, displaying GA License Plate SAW8295, with VIN: 1FT8W2BT1NEF52007.

    b. One (1) silver 2004 Ford F-250 Super Duty, displaying GA license plate RDG7530, with VIN: 1FTNW20P84EB75537.

24. Quinones-Quinones confirmed that the vehicles noted above belonged to him. Quinones-Quinones pulled a set of truck keys from his pocket to unlock the white Ford F-250 to allow BPA access for the vehicle to conduct the search. Quinones-Quinones also confirmed that he owned the contents of the vehicle. BPAs discovered a box of ammunition in the center console. Since Quinones-Quinones was not restrained and was speaking with BPAs near his hotel room, a BPA asked if Quinones-Quinones had any firearms. Quinones-Quinones confirmed that he had a rifle under the back seat of the truck. The BPA located a Rossi Model RS22M hunting rifle chambered in .22WMR with Serial Number 7CA318142P. BPAs also found in the vehicle the following ammunition: 140 rounds of .17 HMR ammunition, 39 rounds of 30-06 Springfield ammunition, and 3 rounds of .308 Winchester ammunition.

25. Prior to the discovery of the firearm in the vehicle, BPAs went to Room 324 with hotel management and attempted to contact the occupants. When hotel management knocked on the door, a male inside opened the door, but after observing BPAs standing nearby, the male closed and locked the door.

26. BPAs asked for Quinones-Quinones' assistance with contacting the individuals in Room 324, to which he agreed, but the occupants would not open the door at his request either. Quinones-Quinones granted BPAs verbal consent to enter the room as he had rented the room. Additionally, BPAs reasonably believed aliens who had absconded were inside the room and the BPAs had significant concern for potentially imminent destruction of evidence, such as digital media or physical documents related to unlawful employment, transportation and harboring of illegal aliens.

27. Since the deadbolt on the door was secured and the room could not be accessed by the swipe card lock, BPAs broke the window next to the door, unlocked the door and entered the room. BPAs contacted Edgar Garcia-Macari and Santos Ramirez who were hiding in the bathroom. Both Garcia-Macari and Ramirez were found to be aliens who were illegally present within the United States.

28. Records checks revealed Quinones-Quinones had a criminal record which included a felony for narcotics trafficking in the State of Georgia and Quinones-Quinones was arrested for being a felon in possession of a firearm after Agents learned of his felonious record. TARGET DEVICE NUMBER 2 was seized incident to Quinones-Quinones' arrest.

## ELECTRONIC STORAGE (COMPUTER AND CELL PHONE) AND FORENSIC ANALYSIS AS IT RELATES TO ALIEN SMUGGLING ACTIVITIES

29. Through training, conversations with other agents and previous case experience, it has been learned, those knowingly profiting from illegal aliens, whether involved in the capacity as an alien smuggling event organizer, alien smuggling event recruiter, alien load driver, scout, alien stash house operator, and/or other alien smuggling involvements, involve cellular telephonic communication between employees and employers, co-conspirators or other associates, whether via-text messages, social media communication, phone calls,

video chat, data sharing, email, and money transfer applications. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

30. Photo gallery: It is known that those knowingly profiting from illegal aliens keep pictures and videos depicting undocumented aliens, screenshots of routes of travel, destinations, employment work sites and assignments, screenshots of messages between employees and employers, co-conspirators or other associates, and pictures discussing unlawful activities involving aliens.

31. Call logs: It is known that those knowingly profiting from illegal aliens communicate with co-conspirators, illegal aliens from whom they are profiting, and others via-cellular phone before, during and after unlawful activities involving aliens.

32. Message logs: it is known that those knowingly profiting from illegal aliens communicate with employees and employers, co-conspirators or other associates before, during, and after to discuss unlawful activities involving aliens.

33. Social media applications: to include but not limited to; Facebook, Messenger, WhatsApp, and Instagram which have messaging, and data sharing capabilities have been known to be used by those knowingly profiting from illegal aliens to message each other data, pictures, videos, way points, and other information related to unlawful alien activities. It is further known alien smuggling organizations utilize social media applications to recruit and hire people for the purpose of unlawful activities involving aliens.

34. Email accounts: it is known that those knowingly profiting from illegal aliens share messages, pictures, videos, and other information related to unlawful activities involving aliens via-email accounts.

35. Money transfer applications: to include, but not limited to Zelle, CashAPP, Venmo, Western Union have known to be used by those knowingly profiting from illegal aliens for

unlawful activities such as transfer of alien smuggling fees, payment to scouts, alien load drivers, or alien stash house operators.

36. Maps applications: it is known alien smuggling organizations utilize maps applications to include but not limited to Google Earth, Apple Maps, and Google Maps to search stash house addresses, hotel addresses, way points, and GPS locations during activities involving illegal aliens. Those knowingly profiting from illegal aliens often share GPS locations and addresses of alien group pick up locations and alien stash houses with illegal aliens from whom they are profiting or others.

37. Vault applications: it is known that alien smuggling organizations utilize vaults and other related applications to hide pictures, videos and data related to unlawful activities involving aliens.

38. Internet search engines/applications: it is known that alien smuggling organizations utilize internet search engines/applications before and during unlawful activities involving aliens to search for addresses, businesses, people, other information associated to such unlawful activities.

39. Notes applications: it is known that those knowingly profiting from illegal aliens use Notes applications to write notes and information related to alien smuggling activities.

      a.  Computer Image Files

      b.  Computer Video Files

      c.  Electronic spreadsheet (.xls) files

      d.  Cell Phone Backup Files

      e.  Deleted files/Recycle bin

      f.  Unallocated Space (RAM)

      g.  Jump Files

h. Log Files

i. Program files

j. Internet cache file "Cookies"

The affidavit is made in support of an application for a search warrant to search the item(s) described in Attachment B, in connection with an ongoing HSI investigation of alleged violations of Title 8, United States Code, Section 1324, and Title 8, United States Code, Section 1324a.

## TECHNICAL TERMS

40. Based on training and experience, your affiant uses the following technical terms to convey the following meanings:

a. Wireless Telephone:  A wireless telephone (or mobile telephone, or cellular telephone as used herein) is a handheld wireless device used for voice and data communication through radio signals.  A wireless telephone sends signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the telephone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include the following:  storing names and telephone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital Camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Subscriber Identity Module (SIM) Card: a removable card found in certain wireless telephones that stores data unique to the user of the wireless telephone. Such data may include the international mobile subscriber identity (IMSI) number, mobile number, contacts and text messages.

41. Based on training and experience, your affiant knows that the above-described items to be searched include electronic devices which can also be utilized as Digital Cameras. Based on your affiant's training and experience, examining data stored on items of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device(s).

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

42. As described above and in Attachment B, this application seeks permission to search for records and/or information that might be found on the subject electronic devices, in whatever form they are found. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

43. Although some of the records called for by this warrant might be found in the form of user-generated documents (such as picture, and movie files), electronic storage media can contain other forms of electronic evidence as well:

    a.  Forensic evidence on electronic devices can indicate who has used or controlled the electronic device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, electronically stored photographs, and correspondence (and the data associated with the foregoing, such as file creation and last accessed dates) may be evidence of who used or controlled the electronic device at a relevant time.

    b.  A person with appropriate familiarity with how an electronic device works can, after examining this forensic evidence in its proper context, draw conclusions about how the devices were used, the purpose of their use, who used them, and when.

    c.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance with particularity a description of the records to be sought, evidence of this type often is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the electronic device and the application of knowledge about how that device behaves. Therefore, contextual information necessary to understand the evidence described in Attachment B also falls within the scope of the warrant.

44. Your affiant knows that when an individual uses an electronic device to communicate with employees, employers, co-conspirators or other associates, for unlawful purposes, the individual's device may serve both as an instrumentality for committing the crime and as a storage medium for evidence of the crime. The device is an instrumentality of the crime because it can be used as a means of committing the criminal offense. From your affiant's training and experience, your affiant believes that an electronic device used to commit crimes of the types suspected in this investigation may contain data that is evidence of how the electronic device was used, data that was sent or received, notes as to how the criminal conduct was achieved, records of internet discussions about the crime(s), and other records that indicate the nature of the offense(s).

### SEARCH METHODOLOGY TO BE EMPLOYED

45. It would be extremely difficult, if not impossible, to conduct a thorough on-site review of all the potential evidence in this case. Given these constraints, the search methodology to be employed as to computers, cellular telephones and other electronic storage media is as follows:

    a. All computers, cellular telephones and any form of electronic storage that could contain evidence described in the attachment of this warrant will be seized for an off-site search for evidence that is described in the attachment of this warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the items to human inspection in-order-to determine whether it is evidence described by the warrant. It is anticipated that mirror copies or images of such evidence will be made if the failure to do so could otherwise potentially alter the original evidence.

b. Consistent with the information provided within this affidavit, contextual information necessary to understand the evidence, to identify the user/possessor of the electronic devices, and to establish admissibility of the evidence in subsequent legal proceedings will also be sought by investigative agents.

c. Additional techniques to be employed in analyzing the seized items will include (1) surveying various file directories and the individual files they contain; (2) opening files to determine their contents; (3) scanning storage areas, (4) performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in this affidavit and its attachments, and (5) performing any other data analysis techniques that may be necessary to locate and retrieve the evidence in this affidavit and its attachments.

d. Because it is expected that the computers, cellular telephones, and any form of electronic storage media may constitute (1) instrumentalities of the offense, (2) fruits of criminal activity, (3) contraband, or (4) evidence otherwise unlawfully possessed, it is anticipated that such evidence will not be returned to the owner and that it will be either forfeited or ultimately destroyed in accordance with the law at the conclusion of this case. However, if after careful inspection, investigators determine such computer, cellular telephone, and electronic storage media do not contain (1) instrumentalities of the offense, (2) fruits of criminal activity, (3) contraband, (4) evidence otherwise unlawfully possessed, or (5) evidence of the person who committed the offense and under what circumstances the offense was committed, then such items seized will be returned.

## RETURN AND REVIEW PROCEDURES

46. Pursuant to Rule 41 of the Federal Rules of Criminal Procedure, your affiant understands and will act in accordance with the following:

    a. Pursuant to Rule 41(e)(2)(A)(i), an agent is required to file with the court an inventory return, that is, an itemized list of the property seized, within 14 days of the execution of the warrant.

    b. Pursuant to Rule 41(e)(2)(B), Rule 41(e)(2)(A) governs the time within which the electronically stored information must be seized or copied on-site after the issuance of the warrant, not the later review of the media or information seized, or the later off-site digital copying of the media.

    c. Under Rule 41(f)(1)(B), the inventory return that is to be filed with the court may be limited to a description of the physical storage media that was seized or copied, not an itemization of the information or data stored on the physical storage media. Under Rule 41(f)(1)(B), your affiant may retain a copy of that information for purposes of the investigation. The government intends to make and retain a full image copy of the seized media, so that a copy of the evidence rather than the original evidence can be examined. The government plans to seize and retain both the original evidence and any copies of this evidence. This procedure will ensure that the original evidence remains intact, and that potential evidence and instrumentalities of offenses will not be returned to the subject.

## CONCLUSION

47. Based on the foregoing facts, your affiant respectfully submit that this affidavit supports probable cause that Electronic Devices Numbers 1 - 8 contain evidence, fruits, and instrumentalities of violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii)

and (iii); Title 8, United States Code, Section 1324a; Title 18, United States Code, Section 371; Title 18, United States Code, Section 922(g)(1); or Title 18, United States Code, Section 1546(a).

Respectfully submitted,

Stephen Maynard
Special Agent
Homeland Security Investigations

Sworn to and subscribed before me on this, the _26ᵗʰ_ day of August 2025.

Bradley W. Rath
United States Magistrate Judge

<u>**ATTACHMENT A**</u>

The property to be seized and searched are currently located at the Homeland Security Investigations, Gulfport Office, 14091 Customs Boulevard, Gulfport, Mississippi, and is described as follows:

**A)**     **One (1) Samsung Android cellular telephone IMEI Number 351184063755260, seized from Jose Daniel Quinones-Quinones (hereinafter Quinones-Quinones) pursuant to a federal search warrant, on or about May 3, 2025, hereinafter referred to as "TARGET DEVICE NUMBER 1;"**

**B)   One (1) Samsung Android cellular telephone (SM-S938U) bearing two separate IMEI Numbers as follows:  IMEI 1, Number 352512143609897, and IMEI 2, Number 355472313609895, Serial Number R5CY22N98DL seized from Quinones-Quinones, pursuant to a federal search warrant, on or about August 7, 2025, hereinafter referred to as "TARGET DEVICE NUMBER 2;"**

**C)   One (1) I-phone (IMEI Number unknown) seized from Misael Ananias Pineda-Avalos (hereinafter referred to as Pineda-Avalos) on or about August 6, 2025, hereinafter referred to as "TARGET DEVICE NUMBER 3;"**

**D) One (1) Motorola cellular telephone, IMEI Number 351004060769491, seized from Pineda-Avalos, on or about August 6, 2025, hereinafter referred to as "TARGET DEVICE NUMBER 4."**

**E) One (1) Samsung Tablet IMEI Number 354386278122184, seized from Jose Anival Obando-Obando (hereinafter Obando-Obando) pursuant to a federal search warrant, on or about August 7, 2025, hereinafter referred to as "TARGET DEVICE NUMBER 5;"**

F)   One (1) black I-phone (IMEI Number unknown) seized from Obando-Obando, pursuant to a federal search warrant, on or about August 7, 2025, hereinafter referred to as "TARGET DEVICE NUMBER 6;"

G)   One (1) Nokia cellular phone, IMEI Number 350547140594421, seized from Obando-Obando, pursuant to a federal search warrant, on or about August 7, 2025, hereinafter referred to as "TARGET DEVICE NUMBER 7;"

H)   One (1) Samsung Android cellular telephone, IMEI Number 035045467323531, seized from Obando-Obando, on or about August 7, 2025, hereinafter referred to as "TARGET DEVICE NUMBER 8;"

## ATTACHMENT B

## LIST OF ITEMS TO BE SEARCHED FOR AND SEIZED

This affidavit is in support of an application for a warrant to search the DEVICES specifically listed in Attachment A, including any software, digital media, associated storage in the devices located therein that can be used to store information and/or connect to the Internet, for records and materials evidencing a violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii), knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports in material furtherance of his illegal presence or conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation. Further, evidence is sought for violations of Title 8, United States Code, Section 1324a – Unlawful Employment of Aliens; Title 18, United States Code, Section 922(g)(1) – Felon in Possession of a Firearm; Title 18, United States Code, Section 1546(a) – Fraud or Misuse of Visa, Permit or Other Document; and Title 18, United States Code, Section 371 – Conspiracy to Commit any of the above illegal acts. Evidence regarding these offenses, as more specifically identified below, involving Quinones-Quinones, Pineda-Avalos and Obando-Obando include the following:

a. Any materials which indicate contact or interaction with others illegal aliens;

b. Any and all evidence of passwords needed to access the cell phones;

c. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history (including any and all records, showing dominion, ownership, custody, or control over the cellphone).

d. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

e. Any computer, computer system, smart phones and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (such as, JPG, GIF, TIF, AVI, and MPG and other image files), and any electronic data storage devices including, but not limited to hardware, software, diskettes, back-up tapes, CD-ROMS, DVD, Flash memory devices and other storage mediums; any input/output peripheral devices, such as passwords, data security devices, and related documentation, and any hardware/software manuals related to commission of a federal crime;

f. Digital information or digital correspondence pertaining to the unlawful employment, transportation or harboring of illegal aliens, as defined in Title 18, United States Code, Sections 1324 and 1324a, or violations of other federal crimes that were transmitted or received using the DEVICES.

g. Any storage medium withing the DEVICES listed in Attachment A that contain or in which is stored records or information that is otherwise called for by this warrant:

1. Evidence of who used, owned, or controlled the DEVICES listed in Attachment A at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

2. Evidence of software that would allow others to control the DEVICE listed in Attachment A, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

3. Evidence of the lack of such malicious software;

4. Evidence indicating how and when the DEVICES listed in Attachment A were accessed or used to determine the chronological context of device access, use, and events relating to crime under investigation and to the device user;

5. Evidence indicating the device user's state of mind as it relates to the crime under investigation;

6. Evidence of the attachment to the DEVICES listed in Attachment A of other storage devices or similar containers for electronic evidence;

7. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the DEVICES listed in Attachment A;

8. Evidence of the times the DEVICES listed in Attachment A were used;

9. Passwords, encryption keys, and other access devices that may be necessary to access the DEVICES listed in Attachment A;

10. Documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the DEVICES listed in Attachment A;

11. Records of or information about Internet Protocol addresses used by the DEVICES listed in Attachment A;

12. Records of or information about the DEVICES listed in Attachment A Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

13. Contextual information necessary to understand the evidence described in this attachment;